IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FELIX V. CUADRADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-03492-M |
| | § | |
| TI COMMUNITIES, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Defendant's Motion for Summary Judgment (ECF No. 22), Plaintiff's Motion to Strike, Objections, and Response to Defendant's Motion for Summary Judgment (ECF No. 26), and Defendant's Motion to Strike Summary Judgment Evidence (ECF No. 32) and Motion to Strike Affidavits (ECF No. 33). For the following reasons, the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are undisputed, unless otherwise noted. In February 2018,[1] Defendant TI Communities ("TI") hired Plaintiff Felix Cuadrado as an Assistant Maintenance Technician at one of TI's properties, The View at Kessler Park Apartments ("VKP"). Cuadrado Depo. (ECF No. 28-1) at 62:22–66:2.[2] In June 2018, Cuadrado was promoted to Maintenance Director. *Id.* at 203:1-2; Polonsky Decl. (ECF No. 24-1) ¶ 5. As the Maintenance Director,

---

[1] Plaintiff asserts in his Response that he was hired in February 2019, but this appears to be a typographical error, as he later contended he started working at TI on February 26, 2018, he was promoted in June of 2018, and he was on medical leave in January 2019. Resp. at 7.

[2] Citations to the parties' appendices are to the bates numbering of the appendices, and for the first citation include the docket numbers.

1

Cuadrado performed repairs, general upkeep, and preventative maintenance for VKP, including making roof repairs. Cuadrado Decl. (ECF No. 28-1) ¶¶ 4, 34. He also had responsibility for inventory control, and supervised other employees. Polonsky Decl. ¶ 5. Cuadrado reported to the property manager who, in turn, reported to TI's Regional Director, Kathy Ball. Cuadrado Depo. (ECF No. 28-1) at 66:23–67:5. Cuadrado was paid on an hourly basis. *Id.* at 66:12. He was paid his hourly rate for all the work he performed. *Id.* at 132:10-12. Cuadrado made $26 per hour as the VKP Maintenance Director. *Id.* at 154:25.

Sometime in late 2018, TI agreed to sell VKP. Ball Decl. (ECF No. 24-1) at 1. To incentivize employees to stay until the sale closed, TI said it would give a bonus to employees who were still employed with TI at the time of closing. Cuadrado Depo. (ECF No. 28-1) at 201:25-202:8. Cuadrado alleges he was promised a bonus of $10,000. Cuadrado Decl. ¶ 30.

Cuadrado was terminated before VKP sold. Pl.'s App. at 102. At some point before Cuadrado's termination, the Assistant Property Manager, Diane Hernandez, raised concerns that Cuadrado was improperly removing items from VKP. *Id.* at 101. She said she found surveillance video footage of Cuadrado and Sergio Concha, the Assistant Maintenance Technician he supervised, removing appliances from the loading dock in the rear of the building. Hernandez forwarded still frames of the video to Ball, who determined that the images constituted evidence of Cuadrado stealing from TI. *Id.* at 62. As a result, on March 1, 2019, Christine Schoellhorn, the President of TI, terminated Cuadrado for theft, and told him he would be required to return TI's property. Cuadrado Depo. (ECF No. 28-1) at 88:15–89:10. Cuadrado was led out of the VKP lobby and to the parking lot, where Cuadrado asserts that Schoellhorn told a resident that Cuadrado had been fired for theft. *Id.*

Cuadrado searched for new positions at other apartment complexes, and eventually found a job at S2's Hangar Apartments as an Assistant Maintenance Technician, making $18.00 per hour. Cuadrado Decl. ¶ 28.

Cuadrado sued TI in Dallas County District Court, asserting claims for violations of the Family Medical Leave Act (FMLA), defamation, tortious interference, negligent and intentional misrepresentation, breach of contract, promissory estoppel, quantum meruit, and intentional infliction of emotional distress. Pl.'s First. Am. Pet. at 6–10. TI removed the case, and now moves for summary judgment on all of Cuadrado's claims.

## II.   MOTIONS TO STRIKE

Both Cuadrado and TI moved to strike evidence filed in connection with TI's Motion for Summary Judgment. Cuadrado moved to strike Declarations of Schoellhorn, Ball, and Carrie Polonsky, the Senior Vice President of Talent Services. TI moved to strike Cuadrado's "Affidavit" and the "Affidavits" of Juan Colegio and Maria Martinez, former employees of TI, and moved to exclude Colegio and Martinez as testifying witnesses. Cuadrado objected to and moved to strike still frames of video surveillance of Cuadrado removing appliances from the back entrance of the building into evidence, and TI asserted objections relating to Cuadrado's now-abandoned FMLA claim, which objections are therefore moot.

### a. Cuadrado's objections and motions to strike to Declarations of TI witnesses

In his Response to Defendant's Motion for Summary Judgment, Cuadrado objects to, and moves to strike, the Declarations[3] of TI witnesses Schoellhorn, Ball, and Polonsky on the grounds that they contain inadmissible hearsay and are not based on personal knowledge.

---

[3] Cuadrado repeatedly refers to the "Affidavits" of Polonsky, Schoellhorn, and Ball, but cites to portions of TI's appendix that correspond with the Declarations of Polonsky, Schoellhorn, and Ball. The Court construes Cuadrado's reference to the "Affidavits" as being to the Declarations.

3

Specifically, Cuadrado objects that portions of the TI's witness Declarations that recount the declarant learning about Cuadrado's alleged theft are inadmissible hearsay. For instance, Cuadrado objects to Paragraph 13 of Polonsky's Declaration, in which she states that Ball "informed [her] that the photos and videos showed Cuadrado and Concha removing company property from the VKP building without permission or business justification." Polonsky Decl. ¶ 13. Similarly, Cuadrado objects to Paragraph 3 of Schoellhorn's Declaration (ECF No. 24-1) ¶ 3, and to Ball's Declaration, which states that Ball was "made aware" of discrepancies with orders for replacement appliances because "it was reported" and "brought to [her] attention" that Hernandez, VKP's Assistant Property Manager, did not trust Cuadrado. Ball Decl. (ECF No. 24-1) ¶¶ 4, 6–7.

These statements are not offered for the truth of the matter asserted—that Cuadrado stole from TI—but instead reflect the mental state of TI's managers in making personnel decisions. Accordingly, under Federal Rule of Evidence 802, these statements are not inadmissible hearsay, and the Motion to Strike them is denied.

Cuadrado also objects to paragraphs in Schoellhorn, Ball, and Polonsky's Declarations that discuss video and related photos allegedly depicting Cuadrado stealing from TI, as reflecting a lack of personal knowledge. For instance, Cuadrado complains that the witnesses did not watch the "original video" and have no personal knowledge as to when and where the images were taken. *E.g.*, Resp. at 26–27. Cuadrado further objects to Paragraph 17 of Polonsky's Declaration and Paragraph 12 of Ball's Declaration—which describe how Polonsky told Ball to report Cuadrado's alleged theft to the police—as misleading, because the Declarations omit that Polonsky did not instruct Ball to file a police report until after TI received a demand letter from Cuadrado's attorney.

Federal Rule of Civil Procedure 56(c) requires that an affidavit or declaration "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, the Court has reviewed the complained-of statements relating to the video and photos, and concludes that they are based on the respective declarant's personal knowledge. For example, in her Declaration, Polonsky recounts Ball providing her with what Ball described as photos and video from a VKP surveillance camera, explains that she recognized Concha and Cuadrado because she had previously met them, and describes what they allegedly show. Polonsky Decl. ¶ 13. The fact that Polonsky does not directly describe when or where the video was taken does not warrant excluding statements within her personal knowledge, and Cuadrado has not otherwise shown her to lack competence to testify. Further, the omission from the Declarations of details about when the police report was filed does not warrant exclusion. Cuadrado's Motions to Strike Schoellhorn's, Polonsky's, and Ball's Declarations are DENIED.

      b. **TI's objections and motions to strike Cuadrado's "Affidavit" and Colegio's and Maria Martinez's "Affidavits"[4] and testimony**

          i. Cuadrado's "Affidavit"

TI objects to and seeks to strike Cuadrado's "Affidavit" in its entirety for lack of verification, and moves the Court to strike paragraphs from the "Affidavit" that constitute hearsay or purportedly contradict Cuadrado's deposition and the Amended Complaint. ECF No. 32.

TI argues that Cuadrado's "Affidavit" must be stricken in its entirety because it is not verified. However, federal law permits unsworn Declarations to have "like force and effect" of an affidavit supporting a motion if the Declaration is made under penalty of perjury and dated.

---

[4] As set out below, the documents which Cuadrado refers to as "affidavits" are, in fact, Declarations.

28 U.S.C. § 1746. Here, Cuadrado signed and dated the document under penalty of perjury. Cuadrado Decl. at 8. The Court therefore construes the document as a Declaration, and denies TI's request to exclude it.

TI contends that the Court should nevertheless strike portions of Cuadrado's Declaration that contradict his prior statements. Specifically, TI objects to Paragraph 10, describing how Cuadrado had allegedly moved a stove from apartment 1108, and Paragraph 30,[5] stating that Ball offered Cuadrado a bonus to "get the property ready for sale, in addition to [his] Service Director position/duties." Cuadrado Decl. ¶¶ 10, 30. TI points to Cuadrado's deposition testimony, in which he previously testified that he had moved a stove from apartment 1008, and statements in the Amended Complaint, which state that the only requirement to receive a bonus was that VKP be sold. Cuadrado Depo. at 123:23, 181:23; Pet. (ECF No. 1-1) ¶ 35. Because the complained-of statements in Cuadrado's Declaration allegedly contradict his prior statements, TI argues that these statements constitute a sham under *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir. 1996), which prohibits a party from submitting an affidavit that "impeaches, without explanation, sworn testimony."

As an initial matter, Cuadrado has explained the discrepancy in his testimony about the number of the apartment from which he removed a stove, and that slightly different apartment number referenced in his Declaration.[6] Further, *S.W.S.* is the exception to the rule that a trial court cannot disregard an affidavit just because it conflicts "to some degree" with the same person's deposition. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). Under

---

[5] In addition to objecting to Paragraphs 10 and 30, TI also objected to Paragraph 21 as relating to the alleged bonus agreement. Paragraph 21 of Cuadrado's Declaration, however, refers to the police report of the alleged theft, whereas Paragraph 31 refers to the bonus agreement. Cuadrado Decl. ¶¶ 21, 31. The Court considers TI's reference to Paragraph 21 to be a typographical error, but declines to strike Paragraph 31 for the same reasons as it does for Paragraph 30.

[6] Cuadrado stated in his Declaration that he meant to say Apartment 1008 when he stated 1108 in his deposition, and as was reflected in the work order he had completed. Cuadrado Decl. ¶ 10.

the sham affidavit rule, a court may refuse to give credence to statements that are so inconsistent that they "constitute an obvious sham," but need not strike every discrepancy. *Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)); *see also id.* ("Generally, . . . a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier statement." (quotation marks omitted)). In both his Declaration and his deposition, Cuadrado states he undertook additional duties to get VKP ready for sale; therefore, his testimony can be reconciled and presents a credibility determination reserved for the factfinder. *See id*. at 473. TI's Motion to Strike these portions of Cuadrado's Declaration is therefore denied.

   TI further contends that portions of Cuadrado's Declaration are conclusory, lack foundation, and are not based on personal knowledge. However, as Cuadrado stated that the contents of his Declaration are within his personal knowledge, TI essentially asks the Court to weigh the credibility of Cuadrado's statements. Given that credibility determinations are strictly within the purview of the factfinder, the Court denies TI's Motion on these grounds. *See Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 216 (1931) ("[T]he question of the credibility of witnesses is one for the jury alone . . . .").

   TI further moves to strike portions of Cuadrado's Declaration that it claims constitute inadmissible hearsay. Federal Rule of Civil Procedure 56 requires that an affidavit or declaration set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4). In his Declaration, when discussing his efforts to get a job after VKP, Cuadrado states, "I was told upon turning in the application that I would get the job given my qualifications and many years of experience. But, when each apartment complex called TI for reference, they did not hire me. A

representative from each apartment told me that a TI representative stated that I was terminated for stealing." Cuadrado Decl. ¶ 27.  Cuadrado's references in Paragraph 27 of his Declaration to statements allegedly made to him, by prospective employers, ant to statements allegedly made by TI to prospective employers, constitute inadmissible hearsay.  *See* Fed. R. Evid. 802, 803.  Therefore, the Court STRIKES such portions of Paragraph 27 of Cuadrado's Declaration.

TI further objects to Paragraph 41 of Cuadrado's Declaration, concerning his health condition; as the parties have stated that they resolved this dispute, the objection is denied as moot.

### ii.  Martinez and Colegio's "Affidavits"[7] and Testimony

TI moves to strike the Declarations of Maria Martinez and Juan Colegio, and to exclude them from testifying as witnesses because (1) they failed to appear for depositions, (2) Cuadrado's counsel did not cooperate with their appearing, in bad faith, and (3) the Martinez Declaration was submitted under "suspicious" circumstances.  ECF No. 33.

On January 15, 2021, in his first amended disclosures, Plaintiff identified "Juan"—first name only—and Maria Martinez as likely to have discoverable information.  Def.'s. App. (ECF No. 34-1) at 1, 3, 8.  On August 13, 2021, in his second amended disclosures, Cuadrado disclosed Juan Colegio's last name and the contact information for Colegio and Martinez.  *Id.* at 12–17.  On August 17, 2021, Cuadrado produced via email a document entitled "Affidavit of Maria Martinez," which was purportedly signed and dated by Martinez that same day.  *Id.* at 18–22.  The parties do not dispute that Cuadrado—not Martinez—signed Martinez's name on the Declaration produced on August 17.  Mot. to Strike (ECF No. 33) at 5, Resp. (ECF No. 37) at 2.  Cuadrado maintains that there was a misunderstanding, and that less than 24 hours later,

---

[7] To the extent the Martinez and Colegio Affidavits were not verified, they are construed as Declarations.

Plaintiff's counsel procured a copy of the Declaration, signed by Martinez, and produced it to defense counsel, along with an explanation. Def's. App. at 40–42.

The fact discovery deadline was initially August 20, 2021. ECF No. 8. That same day, Magistrate Judge Rutherford extended the discovery deadline for two weeks for Cuadrado to provide complete witness contact information for all persons identified in his disclosures, and an additional thirty days for TI to act on that information. ECF No. 10. On August 26, 2021, defense counsel inquired about the availability of Martinez and Colegio for deposition, and then subpoenaed them. Def.'s App. at 43–50. On September 8, 2021, attorneys for both parties appeared, but Martinez and Colegio did not. Certificates of Nonappearance (ECF No. 34-1) at 71–72, 90–91. TI now argues that Cuadrado's counsel did not cooperate in securing their appearances.

Although the Court has inherent power to impose sanctions to control litigation before it, *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010), the Court declines to strike the Declarations of Colegio and Martinez. TI could have moved to compel their testimony but declined to do so. Their testimony by Declaration is of marginal significance. As to TI's objections that portions of Colegio's and Martinez's Declarations contain hearsay or impermissible character evidence, those objections are OVERRULED.

### c. The Surveillance Video

The parties have other disputes relating to the surveillance video and associated still photographs purporting to show Cuadrado's theft. Cuadrado contends that TI improperly failed to preserve the original, complete surveillance video, and any other videos from which photographs were taken. Cuadrado relies on the affidavit of his counsel, Vincent Bhatti, that

9

TI's counsel informed him that the original videos are no longer available. Pl.'s App. at 51. In turn, TI moves to strike Bhatti's testimony as irrelevant hearsay.

Federal Rule of Civil Procedure 37(e) provides that, "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," the Court may issue an appropriate remedy. Fed. R. Civ. P. 37(e). If the Court finds that a party was prejudiced by the loss of information, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the Court finds that the information was intentionally not preserved, the Court may then take additional steps, including presuming that the lost information was unfavorable to the party who did not preserve it. *Id.* 37(e)(2).

The Court concludes that relief under Rule 37(e) is inappropriate here, because Cuadrado cannot show prejudice from the loss of the original videos, to the extent they once existed. TI witnesses testified that they relied on still frames of the video surveillance, which Cuadrado attached as evidence to his Response, to make their decision to terminate Cuadrado. *See* Ball Depo. at 168, 177, 186–87. Cuadrado does not argue that other, potentially exonerating events occurred which would have been captured and included on the original videos; for example, Cuadrado might have argued that he later returned the allegedly stolen appliances to the apartments, which might have been reflected in the full videos. Instead, he simply argues he "cannot put forward additional proof of TI's malice" without the originals, without stating what the missing videos would purportedly show. Resp. at 29.

Cuadrado also speculates that the video and photographs were manipulated, but he does not provide a factual basis for this position. Accordingly, the Court finds no basis to strike the video or photographs on these grounds.

Accordingly, the Motion to Strike the photos and the video are DENIED.  TI's objections to Bhatti's Declaration are DENIED AS MOOT.

### d. FMLA Objections

Cuadrado previously asserted a claim that TI's Property Manager, Jessica Martinez, retaliated against Cuadrado for taking FMLA leave, but has since dropped that claim.  *See* Pl.'s Second Am. Pet. (ECF No. 1-1) at 10–11.  Accordingly, TI's objections to statements made by Jessica Martinez are DENIED AS MOOT.

## III.   MOTION FOR SUMMARY JUDGMENT

TI moves for summary judgment on Cuadrado's claims for violation of the FMLA, defamation, tortious interference, negligent and intentional misrepresentation, breach of contract, promissory estoppel, quantum meruit, and intentional infliction of emotional distress.  For the reasons explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

### a. Legal Standard

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The movant bears the burden to prove that no genuine issue of material fact exists, but this does not require negating elements of the nonmoving party's case.  *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).  Instead, the moving party can meet its burden by identifying those portions of the pleadings, depositions, and other summary judgment evidence

which demonstrate the nonmoving party lacks evidence to support its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).

The burden then shifts to the nonmoving party to show that summary judgment is not warranted. *Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmoving party must go beyond the pleadings and point to specific facts in affidavits, depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence will not defeat a summary judgment motion. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The court will view all facts and inferences in the light most favorable to the nonmoving party. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566 (5th Cir. 2003). However, the court "will not assume 'in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075).

### b. Analysis

In his response, Cuadrado did not address his claims under the FMLA, for negligent and intentional misrepresentation, and intentional infliction of emotional distress. Accordingly, the Court determines that Cuadrado has abandoned these claims, and summary judgment is granted in favor of TI on these claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss. Her failure to pursue this claim beyond her complaint constituted abandonment."). The Court will address the remainder of Cuadrado's claims.

### i. Defamation

Cuadrado asserts that TI is liable for defamation based on two allegedly defamatory statements: first, that an unidentified manager of TI told the manager of Center Ridge Apartments, Cuadrado's prospective employer, that Cuadrado was a thief; and second, that Schoellhorn told a VKP resident that Cuadrado had been fired for theft. Resp. at 30–31.[8]

Under Texas law, the elements of defamation are "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) damages, in some cases." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). A statement is defamatory per se when it is "so obviously harmful to reputation that the jury may presume the existence of general damages." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Defamation per se includes accusing someone of committing a crime. *Id.* at 596.

Regarding the first alleged defamatory statement—that TI made statements to Center Ridge Apartments that Cuadrado was a "thief"—Cuadrado's evidence consists of his own Declaration and deposition. Resp. at 20. Cuadrado claims that he heard from a friend, Mario Maldonado, that a TI manager told the hiring manager at Center Ridge Apartments that Cuadrado was a thief. Pl.'s App. at 5, 13–14, 23, 34. Cuadrado provides no evidence from Maldonado.

TI responds that Cuadrado's unsubstantiated, hearsay testimony is not sufficient to raise a genuine issue of material fact. TI provides evidence that no prospective employer of Cuadrado

---

[8] Because he does not address it in his Response, Cuadrado appears to have abandoned his claim that someone at TI told a different prospective employer, Cherrybrook Apartments, that he was "bad news." *See* Pl.'s App. at 11–12. In addition, Cuadrado did not respond to TI's Motion for Summary Judgment as to his claim that someone at TI defamed him to his current employer, S2, an assertion which TI rebutted with evidence from S2's employee records for Cuadrado, showing no communication with TI. Def.'s App. at 421–92.

ever requested information about him from TI, and that TI provided no such information. *See* Def.'s App. at 404, 415–20.

Cuadrado's unsubstantiated assertions with respect to what TI told his prospective employers are based on inadmissible hearsay, and there is no admissible evidence that TI defamed Cuadrado to prospective employers. *See* Fed. R. Civ. P. 56(c)(4).

As to the second basis for his defamation claim—a statement allegedly made by Schoellhorn to a VKP resident—Cuadrado's evidence was described in his deposition:

> "When we walk by the lobby, she go on one of tenants—there was an old lady. She was a teacher. She had been livin [sic] in that building for 38 years.
>
> 'Felix, what's going on?'
>
> And Christine [Schoellhorn] say, 'He's fired because he's a thief.'"

Pl.'s App. 23.

TI argues that Cuadrado does not offer any corroboration for his version of events, and that his testimony alone, without evidence of understanding by the resident that she heard the defamatory statement, is insufficient to withstand summary judgment.

The Court disagrees with TI. Cuadrado's deposition testimony creates a fact question. *See Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 448 (5th Cir. 2018); *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016); *Johnson v. Dubroc*, 3 F.3d 436 (5th Cir. 1993). A district court may not weigh the credibility of evidence at the summary judgment stage, but must instead determine whether there is evidence that could support a verdict for the plaintiff. *Carroll v. Metro. Ins. & Annuity Co.*, 166 F.3d 802, 808 (5th Cir. 1999). Here, Cuadrado's testimony about Schoellhorn's alleged statement to a resident creates a factual dispute about a key element of his claim and is appropriate for determination by a factfinder.

TI further argues that summary judgment is still appropriate because Cuadrado cannot prove the alleged statement was made negligently, and because the affirmative defenses of truth and qualified privilege apply. The Court disagrees with TI. The summary judgment record indicates that Ball, Polonsky, and Schoellhorn reviewed a video and photos of Cuadrado removing an appliance, and because they did not know Cuadrado to have permission or a business justification to do so, concluded he was stealing company property. However, TI admits that it took no witness statements before terminating Cuadrado, and the summary judgment record is unclear as to whether the property in question ever actually left VKP's premises—*i.e.*, whether Cuadrado ever actually deprived TI of property. Pl.'s App. at 126; *see also* Ball Depo. (ECF No. 24-1) at 97:23–98:22, 112:6-8, 183:23–188:15, 198:2–20; Martinez Decl. ¶¶ 11–12; Def.'s App. at 20–21; Cuadrado Depo (ECF No. 28-1). at 221:24–222:22. Accordingly, a reasonable juror could conclude that TI was negligent—if not reckless—in identifying Cuadrado as a "thief" to a resident before interviewing witnesses or determining whether that characterization was true, especially given TI's policy that misconduct allegations are to be thoroughly investigated. Pl.'s App. at 78. For the same reason, the Court declines to grant summary judgment on TI's affirmative defenses of truth and qualified privilege, which confers civil immunity to a company for making allegedly defamatory statements to "interested persons" and prospective employers of current or former employees, and because TI has not conclusively established that the statement was substantially true or made with an absence of malice. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 645 (Tex. 1995) ("To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice."); *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990).

Accordingly, TI's Motion for Summary Judgment is **DENIED** as to Cuadrado's defamation claim arising from Schoellhorn's alleged statement to a resident.

### c. Contract-Related Claims

Cuadradro brings a claim against TI for breach of contract, or, in the alternative, for promissory estoppel or quantum meruit, based on breach of an alleged agreement TI made to pay Cuadrado a $10,000 bonus. The Court grants summary judgment for TI on these claims.

#### i. The Bonus Contract

TI moves for summary judgment on Cuadrado's breach of contract claim relating to a purported "bonus contract," by which TI allegedly promised Cuadrado a $10,000 bonus in exchange for his services in getting VKP ready for sale. TI asserts that a bonus was offered to employees who remained employed through the closing of the property's sale, but since Cuadrado's employment was terminated prior to closing, he was not eligible for a bonus.

In Texas, to establish a breach of contract claim, the plaintiff must prove that "(1) a valid contract between plaintiff and defendant existed, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff sustained damages as a result of the breach." *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 150 (Tex. App.—Houston, 2005, no pet.). As to the first element, the plaintiff must demonstrate: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas, 2006), *rehearing overruled* (2006).

Here, Cuadrado has not presented competent summary judgment evidence to show there was a valid contract for a bonus of $10,000 in exchange for his continued services. Cuadrado

contends that a contract existed between him and TI that he would receive a $10,000 bonus for his exemplary work when the building sold. The only evidence of the terms of such an agreement come from Cuadrado's Declaration, in which he states that, "Ball, on behalf of TI, offered [him] a $10,000 bonus" to get the "property ready for sale"; "because of [Ball's] offer, [he] would go above and beyond to get the Property ready for sale"; and, "per [his] bonus agreement with TI," he repaired the roof of the building and the elevator in such a way that saved TI "approximately $1,000,000." Cuadrado Decl. at 6–7. Cuadrado further claims that Ball sent an email to "everybody" regarding the terms of the bonus, but he is unable to locate it. *Id.* at 36.

Cuadrado provides no evidence of a meeting of the minds of TI and Cuadrado as to the terms of the alleged bonus contract. He is unable to locate the email he claims Ball sent regarding the terms of the bonus, and his description of the alleged agreement is inconsistent. His Declaration refers to getting the property ready for sale, but elsewhere, he stated that the only condition to receive the bonus was that "the building must sell." Pl.'s First. Am. Pet. at 5; Cuadrado Depo. at 202:2-5.

Cuadrado has not established proof of a binding agreement between the parties that the bonus was unconditionally due him. Cuadrado does not dispute TI's contention that being employed by TI at the time the building sold was a requirement for him to receive the bonus, nor that he was not employed by TI at closing. Even if there was an agreement, Cuadrado cannot provide summary judgment evidence of performance of that material term of employment as of the closing date.

Finally, Cuadrado's claim fails for lack of consideration. Cuadrado does not dispute that he was not required to perform anything beyond his regular job duties to be entitled to the bonus he seeks. Cuadrado offers no evidence of *additional* job duties he undertook in consideration for

17

a performance-based bonus.[9]  Consideration is an essential element of an enforceable contract, and a covenant for additional employee benefits requires new consideration.  *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) (an employer could not enforce a new obligation on an existing employee without providing new consideration).  Cuadrado has not shown new consideration, so summary judgment must be awarded in favor of TI on his breach of contract claim as to a bonus contract.

### ii. Recovery Under Quasi-Contract Theories

TI seeks summary judgment on Cuadrado's bonus claims under quasi-contract theories of promissory estoppel and quantum meruit.

Regarding promissory estoppel, TI argues that Cuadrado has provided no evidence beyond conclusory allegations in his pleadings that he relied, to his detriment, on TI's promises of a bonus.  Proof of detrimental reliance is an element of promissory estoppel.  *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).  Cuadrado provides no evidence that he did more than what was required of him to complete his job duties, or that he declined other opportunities in reliance on a bonus.  *See Trevino & Assocs. Mech., L.P. v. Frost Nat. Bank*, 400 S.W.3d 139, 147 (Tex. App.—Dallas 2013, no pet.) (plaintiff required to show material change in position in response to defendant's promise).  Cuadrado's argument that he went "above and beyond" his normal job duties is conclusory.  Cuadrado admits in his Declaration that he only undertook tasks, like repairing the roof, that were already part of his job description.  Cuadrado Decl. ¶¶ 4, 34, 38–39.

---

[9] Cuadrado implies that handling fire marshal inspections was outside of the scope of his duties as lead maintenance technician. Pl.'s App. at 44 ("inspection[s] in that building" were "above and beyond" his job description).  Yet he admits, in the same statement, that getting the building ready for inspections was the job of the lead maintenance technician or maintenance director—titles Cuadrado uses interchangeably—and that the previous TI maintenance technician was fired for not completing fire marshal inspections satisfactorily.  *Id.* at 20, 44.

Cuadrado also cannot recover under a quantum meruit theory. Quantum meruit is an alternative to a breach of contract claim, which allows a plaintiff to recover damages by showing he (1) rendered valuable services (2) to the defendant, (3) who accepted his services, (4) and he rendered the services under circumstances as would reasonably notify the defendant that plaintiff expected to be paid. *Johnston v. Kruse*, 261 S.W.3d 895, 901 (Tex. App.—Dallas 2008, no pet.). Here, Cuadrado had preexisting employment with TI, which compensated him for his work as Maintenance Director. Cuadrado cannot establish that he was not paid for any services he rendered as an employee of TI. Therefore, TI is entitled to summary judgment on Cuadrado's claims for quantum meruit.

### d. Tortious Interference

To show tortious interference with prospective business relations, Cuadrado must prove "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Cuadrado complains that TI interfered with his applications for employment at Cherrybrook and Center Ridge Apartments, but provided no competent evidence that he would reasonably have been hired at either apartment complex, nor that interference occurred. Cuadrado admitted in his deposition testimony that he never received an offer from Center Ridge, and his statement that a manager at Cherrybrook Apartments called, revoking his prior offer, is inadmissible hearsay.

Cuadrado provided no admissible evidence that TI interfered with any of his efforts to secure employment after he was terminated at VKP.  TI submitted admissible evidence that it did not do so, and so is entitled to summary judgment on Cuadrado's interference claim.

## IV.     CONCLUSION

For the reasons stated above, the Motions to Strike and TI's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is granted on Cuadrado's claims for breach of contract, promissory estoppel, quantum meruit, defamation as to the third party employers, negligent and intentional misrepresentation, intentional infliction of emotional distress, and under the FMLA, and denied only on Cuadrado's claim for defamation to a resident.

**SO ORDERED**.

January 14, 2022.

_____
BARBARA M. G. LYNN
CHIEF JUDGE